**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

DEVINCHE ALBRITTON,

       *Plaintiff,*

v.                                CASE NO.  2:18cv689

S. CARPENTER, et al.,

       *Defendants.*

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' PARTIAL MOTION TO DISMISS

       Defendants Liptrot and Coleman, by counsel, submit the following Memorandum in support of their motion to be dismissed and terminated from this action; and Defendants Carpenter (Counts 17-18), Critton (Count 17) and Turner (Counts 21-22 and 25), by counsel, submit the following Memorandum in support of their motion to dismiss these claims as alleged against them in Plaintiff's Second Amended Complaint (ECF No. 34).[1]

## BACKGROUND AND CLAIMS

       Plaintiff DeVinche Albritton, #1016653 ("Albritton" or "Plaintiff"), an inmate within the

---

[1] On February 6, 2023, Defendants Adams, Branch, Brown, Cabell, Darden, McDonald, Rollins and White filed a motion to dismiss for failure to state a claim.  (ECF Nos. 40-41).  On the same day, Defendants Adams, Branch, Brown, Gill, McDonald, Rollins, Vandermark and White filed a partial answer.  (ECF No. 42).  In response to the Court Order entered May 9, 2023 (ECF No. 49), undersigned counsel entered her appearance and accepted service on behalf of Defendants Coleman, Critton, Foster, Liptrot, Parris and Turner on June 5, 2023.  (ECF Nos. 54-55).  On the same day, undersigned counsel declined to accept service as to Defendants Smith, Carpenter and Poarch.  (ECF No. 56).  On June 7, 2023, undersigned counsel entered her appearance and accepted service on behalf of Defendant Carpenter.  (ECF Nos. 57-58).  Accordingly, undersigned counsel currently does not represent Defendants Smith and Poarch and is not addressing the claims alleged against them.

custody of the Virginia Department of Corrections ("VDOC"), is currently incarcerated at River North Correctional Center.  On January 24, 2022, pursuant to this Honorable Court's Order (ECF No. 31) entered November 22, 2021, Plaintiff, proceeding *pro se*, filed his Second Amended Complaint (ECF No. 34) pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights under the First, Eighth and Fourteenth Amendments by various Defendants while he was incarcerated at Sussex II State Prison ("Sussex II").  Defendants construe Plaintiff's Second Amended Complaint as alleging the following claims against them:[2]

**Count 1:**  Defendants Rollins, White and Adams violated Plaintiff's First Amendment rights by retaliating against him for filing lawsuits and exhausting his administrative remedies through the prison grievance process.  (ECF No. 34, at 9, "Claim #1" and ¶¶ 2-3 and 9).

**Count 2:**  Defendants Rollins, White and Adams violated Plaintiff's Eighth Amendment rights by failing to protect him by housing him with gang members and harassing him with threats of transferring him to long-term segregation at Red Onion State Prison.  (*Id.*).

**Count 3:**  Defendant Adams violated Plaintiff's Fourteenth Amendment rights to due process when she refused him employment in the kitchen.  (ECF No. 34, at 9, "Claim #1" and ¶ 9).

**Count 4:**  Defendant Gill violated Plaintiff's First Amendment rights to be free from retaliation by processing a false disciplinary charge against him for stealing.  (ECF No. 34, at 9, "Claim #2" and ¶ 16).

**Count 5:**  Defendant Gill violated Plaintiff's Fourteenth Amendment rights to due process by processing a false disciplinary charge against him for stealing.  (*Id.*).

---

[2] Plaintiff begins stating his claims on page 9 of 12, titled "Plaintiff's Civil Rights Violated." (*See* ECF No. 34).  Plaintiff names every enumerated paragraph (Claim #1-#4) as a separate claim.  Within each paragraph, Plaintiff has written multiple claims against multiple Defendants. At the end of each paragraph, Plaintiff identifies what paragraphs under his "Statement of the Fact(s)" apply to each claim.  The undersigned has attempted to discern Plaintiff's claims to the best of her abilities and has established this list of counts.  Should the Court identify any additional claims or issues for which it deems a response necessary, Defendants respectfully request an additional opportunity to respond to those allegations.

**Count 6:**    Defendants Brown and Vandermark violated Plaintiff's First Amendment rights by retaliating against him for filing lawsuits and grievances.  (ECF No. 34, at 10, "Claim #3" and ¶¶ 20-23).

**Count 7:**    Defendant Brown violated Plaintiff's Eighth Amendment rights by harassing him with threats of disciplinary convictions and transfer to Red Onion State Prison.  (ECF No. 34, at 10, "Claim #3" and ¶ 21).

**Count 8:**    Defendant Brown violated Plaintiff's Fourteenth Amendment rights to due process when he tried him and found him guilty of multiple false disciplinary charges, including unserved disciplinary charges.  (ECF No. 34, at 10, "Claim #3" and ¶¶ 20-23).

**Count 9:**    Defendant Vandermark violated Plaintiff's Fourteenth Amendment rights to due process when she charged him with a false disciplinary charge for abuse of the mail.  (ECF No. 34, at 10, "Claim #3" and ¶ 22).

**Count 10:**    Defendants Darden, McDonald and Cabell violated Plaintiff's First and Fourteenth Amendment rights by failing to properly address Plaintiff's complaints and grievances.  (ECF No. 34, at 10, "Claim #3" and ¶ 24).

**Count 11:**    Defendants McDonald, Branch and White violated Plaintiff's First Amendment rights by retaliating against him for filing lawsuits and grievances.  (ECF No. 34, at 10, "Claim #4" and ¶¶ 25-27).

**Count 12:**    Defendants McDonald, Branch and White violated Plaintiff's Eighth Amendment rights by failing to protect him by housing him with a gang member.  (*Id.*).

**Count 13:**    Defendants Branch and White violated Plaintiff's Fourteenth Amendment rights.  (ECF No. 34, at 10, "Claim #4").

**Count 14:**    Defendant McDonald violated Plaintiff's Fourteenth Amendment rights to due process by reviewing his good time level and transfer recommended during his Institutional Classification Authority Hearing.  (ECF No. 34, at 10, "Claim #4" and ¶ 27).

**Count 15:**    Defendants Carpenter and Critton violated Plaintiff's First Amendment rights by retaliating against him for filing lawsuits and exhausting his administrative remedies through the prison grievance process.  (ECF No. 34, at 9, "Claim #1-2" and ¶¶ 2-3, 9, 12 and 18).

**Count 16:**    Defendant Carpenter violated Plaintiff's First and Fourteenth Amendment rights by retaliating against him for assisting an attorney in another inmate's lawsuit by placing him in restrictive housing without due process.  (ECF No. 34, at 9, "Claims #1" and ¶¶ 6-8).

**Count 17:**   Defendants Carpenter and Critton violated Plaintiff's Eighth Amendment rights by failing to protect him by housing him with gang members and harassing him with threats of transferring him to long-term segregation at Red Onion State Prison.  Defendant Carpenter also threatened to let a correctional officer physically assault Plaintiff.  (ECF No. 34, at 9, "Claims #1-2" and ¶¶ 2-3, 8-9 and 18).

**Count 18:**   Defendant Carpenter violated Plaintiff's Fourteenth Amendment rights to due process when she threatened his employment in the kitchen.  (ECF No. 34, at 9, "Claim #1" and ¶¶ 8-9).

**Count 19:**   Defendant Liptrot violated Plaintiff's First, Eighth and Fourteenth Amendment rights.  (ECF No. 34, at 9, "Claim #1").

**Count 20:**   Defendant Turner violated Plaintiff's First Amendment rights by retaliating against him for filing lawsuits and grievances.  (ECF No. 34, at 9, "Claim #2" and ¶ 11).

**Count 21:**   Defendant Turner violated Plaintiff's Fourteenth Amendment rights to due process when he threatened his employment in the kitchen.  (*Id.*).

**Count 22:**   Defendants Turner and Coleman violated Plaintiff's First and Fourteenth Amendment rights when they arranged and facilitated for him to be robbed of his personal property.  (ECF No. 34, at 9, "Claim #2" and ¶ 13).

**Count 23:**   Defendants Parris and Carpenter violated Plaintiff's First Amendment rights to be free from retaliation by writing false disciplinary charges against him.  (ECF No. 34, at 9, "Claim #2" and ¶¶ 16 and 18).

**Count 24:**   Defendant Parris violated Plaintiff's Fourteenth Amendment rights to due process by writing a false disciplinary charge against him for stealing.  (ECF No. 34, at 9, "Claim #2" and ¶ 16).

**Count 25:**   Defendant Turner violated Plaintiff's Eighth and Fourteenth Amendment rights by housing him with gang members.  (ECF No. 34, at 9, "Claim #2" and ¶ 19).

**Count 26:**   Defendant Foster violated Plaintiff's Fourteenth Amendment rights to due process by reviewing his administrative review and transfer recommended during his Institutional Classification Authority Hearing.  (ECF No. 34, at 10, "Claim #4" and ¶ 27).

In this Motion,[3] the following Defendants are not seeking dismissal as follows: Defendants Carpenter (Counts 15-16 and 23), Critton (Count 15), Turner (Count 20), Parris (Counts 23-24) and Foster (Count 26).  Defendants Carpenter, Critton, Turner, Parris and Foster will submit an Answer addressing these claims.

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (ECF No. 34, ¶¶ 29-35).

## STANDARD OF REVIEW

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also* Fed. R. Civ. P. (8)(a)(2); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009)).  Also, although the Court must consider all of the factual allegations of the complaint as true, the Court is not bound to accept a legal conclusion couched as a factual assertion, *Iqbal*, 556 U.S. at 663-64, nor should the Court accept a plaintiff's "unwarranted deductions," "rootless conclusions of law," or "sweeping legal conclusions cast in the form of

---

[3] On February 6, 2023, Defendants Darden, Cabell, Rollins, White, Adams, Brown, McDonald and Branch submitted a motion to dismiss as to the above-stated claims, Counts 2-3, 7, 10 and 12-13.  (ECF Nos. 40-41). On the same day, Defendants Rollins, White, Adams, Gill, Brown, Vandermark, McDonald and Branch submitted a partial answer as to the above-stated claims, Counts 1, 4-6, 8-9, 11 and 14.  (ECF No. 42).

factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

Although the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## ARGUMENT AND AUTHORITIES

Defendants contend that Plaintiff's Second Amended Complaint should be dismissed against them for the following reasons: (1) Plaintiff fails to allege in Counts 19 and 22 adequate personal involvement for Defendants Liptrot, Turner and Coleman; and (2) Plaintiff's allegations in Counts 17-18, 21-22 and 25 fail to set forth plausible claims for relief.  For these reasons, as discussed in more detail below, Defendants Liptrot and Coleman should be dismissed and terminated from this action, and Defendants Carpenter (Counts 17-18), Critton (Count 17) and Turner (Counts 21-22 and 25) should be dismissed from these claims against them for failure to state a claim upon which relief can be granted.

**I.**     **Plaintiff's Second Amended Complaint against Defendant Liptrot and Count 22 against Defendants Turner and Coleman should be Dismissed for Failure to Allege Adequate Personal Connection to this Cause of Action.**

To state a claim under 42 U.S.C. § 1983, plaintiffs must show direct personal involvement by each particular defendant. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995).  Because a §1983 action seeks to impose personal liability, the plaintiff must allege factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively

shown that the official charged acted personally" in the violation of plaintiff's rights and

affirming dismissal of claim where plaintiff did not allege personal involvement by defendant)

(quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  That is, the complaint must

"make clear exactly *who* is alleged to have done *what* and to *whom*, to provide each individual

with fair notice as to the basis of the claims against him . . . as distinguished from collective

allegations."  *Robbins v. Okla. Ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir.

2008) (emphasis in original).  "[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

### *Count 19: Defendant Lieutenant Liptrot*

As to Count 19, Defendant Liptrot should be dismissed because of Plaintiff's failure to

allege sufficient personal conduct against him.  The Second Amended Complaint alleges no

specific act or conduct on the part of Defendant Liptrot in the body.[4]  Although Plaintiff attaches

to his Second Amended Complaint  an Institutional Classification Authority ("ICA") Hearing

Notification Form[5] indicating that on August 3, 2018, Defendant Liptrot may have authorized

Major Kevin Clark's, a non-party, issuance of a 48-hour notice to Plaintiff for his upcoming ICA

Hearing regarding his placement in restricting housing pending investigation, the complaint fails

to plausibly allege that Lieutenant Liptrot was personally involved in any alleged constitutional

---

[4] "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."  *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1074); *see also Morrison v. Heffner*, No. 3:19cv77, 2021 U.S. Dist. LEXIS 109619 at *4 (E.D. Va. June 10, 2021) (dismissing with prejudice a claim against the Superintendent of the Hampton Roads Regional Jail where the body of the complaint did not mention him).

[5] Defendants interpret Plaintiff's "Exhibit #7" to be documentation in support of his claim against Defendant Carpenter in Count 16 (*see* EFC No. 34, ¶ 7; see also ECF No. 34-1, at 11, "Exhibit #7").

deprivation.  (*See* ECF No. 34-1, at 11, "Exhibit #7").  Nowhere in Plaintiff's Second Amended Complaint are there specific allegations setting forth what, precisely, Liptrot did to make him liable to Plaintiff for a First, Eighth or Fourteenth Amendment violation.  Because this Defendant has not been placed on notice as to why, precisely, they are allegedly liable to Plaintiff, the claims against them fail under Rule 8(a)(2) of the Federal Rules of Civil Procedure.  That is, the Second Amended Complaint raises no more than a "sheer possibility" that Defendant Liptrot "acted unlawfully," and, therefore, fails to state a plausible claim for relief against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's Second Amended Complaint utterly fails to give Liptrot "fair notice" of the claims against them "*and the grounds upon which [they] rest[].*" *Twombly*, 550 U.S. at 555 (emphasis added) (omission in original) (internal quotations omitted).  As the United States Supreme Court has explained, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,  . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."  *Id.*; *see also Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) ("[N]otice pleading requires generosity in interpreting a plaintiff's complaint.  But generosity is not fantasy.").

Because the allegations against Defendant Liptrot in Count 19 do not contain sufficient facts from which the Court could "draw the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff has not stated a plausible claim against him. *Iqbal*, 556 U.S. at 678.  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Pena v. Garder*, 976 F.2d 469, 471 (9th Cir. 1992). Further, Defendant Liptrot cannot be held liable under §1983 on a theory of *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *see also, e.g.*, *Blantz v. Cal. Dep't*

*of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) ("Blantz's complaint does not contain any specific factual allegations regarding Hill's involvement in the actions giving rise to this lawsuit …. Although Hill is alleged to have 'directed' the other defendants to take these actions, no factual allegations support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss.").

As Plaintiff failed to allege any facts to show Defendant Liptrot could be liable for a First, Eighth or Fourteenth Amendment violation, any and all claims against him in Count 19 should be dismissed.

<u>Count 22: First Amendment Claim Against Defendants Turner and Coleman</u>

In Count 22 of his Second Amended Complaint, Plaintiff avers that Defendants Turner and Coleman violated his First Amendment rights on February 14, 2019 by "allowing and assisting Plaintiff's cell partner to rob and steal all of his food and property." (ECF No. 34, ¶ 13 and at 9, "Claim #2"). Plaintiff further avers that Defendants Turner and Coleman did this out of retaliation for filing a lawsuit against Defendant Carpenter and other Sussex II staff. (*Id.* at ¶ 14 and at 9, "Claim #2"). Defendant Carpenter allegedly discovered Plaintiff was suing her on February 13, 2019 after his legal mail was delivered. (*Id.* at ¶ 14).

In support of his claims against Defendants Turner and Coleman in Count 22, Plaintiff attaches grievance documents: (1) A regular grievance submitted March 5, 2019 where he complains of "being robbed" while he was at work, and demands he be compensated for his property. This regular grievance was denied at intake for insufficient information and Defendant Critton[6] instructed Plaintiff to "submit property inventory sheet and or receipts of purchase (*see*

---

[6] To the extent that Plaintiff is attempting to hold Defendant Critton liable based upon her denial of his regular grievance at intake, Plaintiff simply has "no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Courts have held time and time again that a prison official's

ECF No. 34-1, at 19-20, "Exhibit #15"); (2) An offender request submitted January 19, 2019 where Plaintiff complains of his cell mate "acting in a very unproductive and self-destructive manner" and "damage[ing] [his] property and legal paperwork by spilling and soaking [his] stuff with wine," and he requests that his cell mate be removed because he doesn't "trust him around [his] stuff while [he's] at work" (*see id.*, at 21-22, "Exhibit #15"); (3) A Level I grievance response reflecting that Plaintiff's grievance about his cell mate being allowed by Defendants Turner and Coleman "to pack up without [him] being present" on February 14, 2019 while he was working in the kitchen was unfounded and reflecting he was compensated $99.74 worth of commissary items (*see id.*, at 23-24, "Exhibit #15"); and (4) A Level II grievance response reflecting that the Level I response was upheld, and his grievance was unfounded (*see id.*, at 25, "Exhibit #15").

In order to establish a claim for retaliation, a plaintiff must show that (1) he engaged in constitutionally protected activity, (2) the defendant took action that adversely affected the exercise of the plaintiff's constitutional rights, and (3) the adverse act was causally related to the protected activity. *Martin v. Duffy*, 977 F.3 294, 299 (4th Cir. 2020). "In the prison context, we treat such claims with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). Consequently, a plaintiff "must present more than naked allegations of reprisal." *Adams*,

---

failure to comply with the grievance procedures is not actionable under § 1983. *See, e.g.*, *Chandler v. Cordova*, No.1:09cv483, 2009 WL 1491421, at *3 n.2 (E.D. Va. May 26, 2009); *Banks v. Nagle*, Nos. 3:07cv419, 3:09cv14, 2009 WL 1209031, at *3 (E.D. Va. May 1. 2009). Consistent with those holdings, the Court held that "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." *Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan 9, 2009). Finally, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." *Id.* (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

40 F.3d at 74.  Here, Plaintiff alleges that on February 14, 2019, his "cell mate" stole his personal property with the assistance of Defendants Turner and Coleman while he was working.  ECF No. 34, ¶ 13.  One day prior, Defendant Carpenter allegedly discovered through legal mail that Plaintiff filed a lawsuit against her and other Sussex II staff.  *Id.* at ¶ 12.  These allegations fail to state sufficient personal involvement by these two Defendants to state a retaliation claim against them.

With respect to the first element, Defendants Turner and Coleman concede for the purposes of the Motion to Dismiss that prison officials may not retaliate against an inmate for exercising his constitutional right to access the courts, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), nor may they take actions that violate the First Amendment "right to file a prison grievance free from retaliation," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).  As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted).  Accordingly, the retaliatory act must have caused the plaintiff to suffer more than a "*de minimis* inconvenience."  *ACLU of Md., Inc. v. Wicomico Cnty.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993).

With regard to the third element of causation, the Fourth Circuit applies a burden shifting approach.  *Martin*, 977 F.3d at 300 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1974)).  First, the plaintiff must show that his "protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action."  *Id.*  In order to do so, the plaintiff must at least show that the defendant had knowledge of his protected activity and that "there was some degree of temporal proximity" between the protected speech and the adverse

act.  *Constantine*, 411 F.3d at 501.  If the plaintiff makes this prima facie showing, then the

defendant bears the burden of proving that he "'would have reached the same decision . . . in the

absence of the protected conduct.'"  *Id.* at 299 (quoting *Mt. Healthy*, 429 U.S. at 283) (omission

in original).

However, Plaintiff's retaliation claim against Defendants Turner and Coleman in Count

22 is based merely on conclusory conjecture that they arranged for his cell mate to "rob" him of

his personal property simply because the day prior Defendant Carpenter discovered he filed a

lawsuit against her and other Sussex II staff.  Plaintiff has not presented "factual allegations

tending to support his bare assertion" that his lawsuit substantially motivated the actions of these

Defendants of which he complains.

Specifically as to the second and third elements of a retaliation claim, Plaintiff fails to

allege facts that would suggest that Defendants Turner's and Coleman's facilitation of this

alleged robbery by his cell mate would have chilled a reasonable person's exercise of his First

Amendment rights, or that there was a casual connection between his exercise of his First

Amendment rights with respect to the lawsuit Defendant Carpenter discovered on February 13,

2019 and his stolen property on February 14, 2019.  Rather, Plaintiff acknowledges that his "cell

partner" was the individual to "rob and steal all of his food and property" on February 14, 2019,

not Defendants Turner and Coleman.  *See* ECF No. 34, ¶ 13.  Plaintiff provides no information

about how Defendants Turner and Coleman allegedly "allowed and assisted" and/or "arranged

and facilitated" for his cell mate to take his personal property outside of his blanket assertions.

Even if he had, Plaintiff's allegation is that Defendant Carpenter, not Turner and Coleman,

discovered that he filed a lawsuit.  Based on his Second Amended Complaint, as pled, Plaintiff

provides nothing more than mere speculation that he was robbed of his property by his cell mate

with the assistance of Defendants Turner and Coleman in retaliation for Defendant Carpenter

discovering that he exercised his First Amendment rights without any factual support to back up

his contentions.[7]  Notably, the Fourth Circuit has cautioned that courts must treat an inmate's

claim of retaliation by prison officials "with skepticism." *Cochran v. Morris*, 73 F.3d 1310, 1317

(4th Cir. 1996).  Consequently, a plaintiff "who claim[s] that their constitutional rights have been

violated by official retaliation must present more than naked allegations of reprisal" to survive

dismissal.  *Adams*, 40 F.3d at 74.

For all of these reasons, Albritton's Second Amended Complaint fails to state a

retaliation claim against Defendants Turner and Coleman in Count 22.

Instead, Plaintiff's allegations in Count 22 against Defendant Turner and Coleman appear

to be nothing more than another grievance that he was deprived of his property.  Defendants

discuss this aspect of Claim 22 below in II(B).

II.     **Plaintiff's Second Amended Complaint Fails to State a Plausible Claim to Establish that his Constitutional Rights were Violated in Counts 17-18, 21-22 and 25.**

A.     **Plaintiff does not plead sufficient facts to state an Eighth Amendment Claim Against Defendants Carpenter, Critton and Turner in Counts 17 and 25.**

In Count 17, Defendants Carpenter and Critton interpret Plaintiff's allegations against

them to be that they violated his Eighth Amendment right to be free from cruel and unusual

punishment by failing to protect him when he was threatened with transfer to long-term

segregation at Red Onion State Prison and when they housed him with gang members.  (ECF No.

---

[7] Counselor Shaw's, a non-party, January 25, 2019 response to his offender request references Defendant Unit Manager Turner being in the proper position to move Plaintiff's cell mate after his cell mate allegedly damaged his personal property.  (*See* ECF No. 34-1, at 21, "Exhibit #15").  There is no mention of filing a lawsuit, just complaints about wanting a new cell mate. (*See id.*).

34, ¶¶ 2-3 and 8-9 and 18 and at 9, "Claim #1").  Specifically, Defendants Carpenter and Critton, along with another defendant, threatened Plaintiff with "a hard prison life at SXIISP where he would suffer and ultimately end up at Red Onion or Wallens Ridge." (*Id.* at ¶ 2).  Defendants Carpenter and Critton, along with other defendants, arranged to house Plaintiff with gang members "as to cause him physical and emotional harm." (*Id.* at ¶ 3).  In support of his claims against Defendants Carpenter and Critton, Plaintiff attaches an incomplete copy of his regular grievance regarding an alleged incident that occurred on December 29, 2017.  (*See* ECF No. 34-1, at 4, "Exhibit #2").  In this regular grievance, Plaintiff complains that on January 11, 2018 he was housed with a "[h]igh ranking MS-13 gang member" and witnessed another inmate beat another inmate to death.  (*See id.*).  Defendant Adams allegedly kept him in the gang member pod per Defendant Carpenter's orders.  (ECF No. 34, ¶ 9 and at 9, "Claim #1").  Plaintiff attaches in support of Count 17 a copy of an emergency grievance dated August 30, 2018.  (*See* ECF No. 34-1, at 15, "Exhibit #11").  In his complaint, Plaintiff alleges that he was "robbed of [his] property" by "gang members who don't want [him] in their pod," and he claims that he has "been under threat ever since" and he asks to be removed from the pod to protect his "property and safety." (*See id.*).  Defendant Adams deemed his complaints not an emergency but forwarded it on to the Investigations Unit.  (*Id.*).

In Count 17, Defendant Carpenter also allegedly threatened to let a correctional officer "beat [Plaintiff] up" and to "ship[] [him] out to 'Red Onion'" after Albritton received a disciplinary charge for Offense Code 228, Unauthorized use or abuse of mail or telephone." (ECF No. 34, ¶ 18 and at 9, "Claim #1; *see also* ECF No. 34-1, at 45, "Exhibit #19").

As to Defendant Turner, in Count 25, Plaintiff alleges that Defendant Turner violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him

14

when he housed him in the gang member housing building, Unit #4.  (ECF No. 34, ¶ 19 and at 9, "Claim #2").  Plaintiff further alleges that the gangs forced him to pay an "extortion tax" and "do their legal work to survive and not be harmed."  (*Id.* at ¶ 19).

It appears that Plaintiff attempts to support his Eighth Amendment claims by attaching other documents, including: (1) an informal complaint dated March 2, 2020, wherein Plaintiff alleges that on the same date a "registered gang member" was housed with him and he generally claims he has "documentation with history of being victimized by gang members" (*see id.*, at 61, "Exhibit #31"); and (2) a regular grievance dated May 19, 2020, wherein Plaintiff alleges after-the-fact that on April 27, 2020 he was "sexually assaulted in fear of his life;" and, despite his notices of warnings to "prison officials," "Sussex II Prison officials knew that Offender Reid is a Registered and High Ranking Gang Member" and "Reid has a history of assaults on staff, offenders, and his cell partners, and that [Plaintiff is] a Registered Sex Offender."  Plaintiff requests that action be taken to transfer him out of this pod and for "a transfer to another facility." (*see id.*, at 62, "Exhibit #32").

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  More specifically, it imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."  *Farmer*, 511 U.S. at 833; *Odom v. South Carolina Dep't of Corr.*, 349 F.3d 765 (4th Cir. 2003).  Prison officials who are deliberately indifferent to "specific known risks of such harm," violate an inmate's Eighth Amendment right to be free from physical harm inflicted by other inmates.  *Pressly v. Huto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).

To establish that prison officials are liable under Section 1983 for failure to protect, a plaintiff must show: "(1) serious or significant physical or emotional injury, and (2) that the prison officials had a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834; *Odom*, 349 F.3d at 770; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "To establish deliberate indifference on the part of the defendants sued individually, [Plaintiff] need[s] to show that the officers acted with the equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [Plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). More than general allegations of fear or the need to be removed must be alleged to demonstrate deliberate indifference. *Id.*

As to the first prong, the deprivation alleged must be, "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. As to the second, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 834. A prison official shows deliberate indifference if he or she knows of an excessive risk to an inmate's safety and disregards or fails to respond to that risk. *Id.* at 837.

Thus, a plaintiff must prove two things under the second prong. First, a plaintiff must show that prison officials subjectively recognized a substantial risk of harm; "it is not enough that the officers *should have* recognized [the substantial risk of harm]… they actually must have perceived it." *Parrish v. Cleveland*, 372 F.3d 294 (4th Cir. 2004) (emphasis added) (citing *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Second, a plaintiff must show that prison officials subjectively recognized that their actions were "inappropriate in light of that risk"; it is not enough that officers *should have* recognized that their actions were inappropriate. *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001) (emphasis added); *Rich*, 129 F.3d at 340 n.2.

"Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 Fed. Appx. 178, 180 (4th Cir. 2005); *see also Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983").

### *Counts 17 (Carpenter and Critton) and 25 (Turner): Housing Plaintiff with Gang Members*

Here, Plaintiff fails to allege facts sufficient to state a failure-to-protect claim against Defendants Carpenter (Count 17), Critton (Count 17) and Turner (Count 25).  Plaintiff has not alleged facts from which it can be reasonably inferred that (1) these Defendants were aware of the facts from which the inference of danger could be drawn and that (2) these Defendants, in fact, drew the inference of danger.  Even assuming that Plaintiff's extortion, robbery or sexual assault satisfies the first element, he does not allege facts from which the court can reasonably infer that Defendants Carpenter, Critton and Turner each acted with deliberate indifference to his safety.  Plaintiff does not allege facts that his cellmate or any of the other gang members on the pod posed an excessive risk to him personally, distinct from the general risks of violence from cellmates and other inmates.  Merely alleging that he was housed with a gang member, even a violent one, is insufficient to plausibly suggest that any of these Defendants "actually knew of and disregarded a substantial risk of serious injury" to Plaintiff.  *Parrish*, 372 F.3d at 303; *see also Smolen v. Brown*, No. 7:18-cv-007621, 2020 U.S. Dist. LEXIS 44139, at *12 (S.D.N.Y. Mar. 13, 2020) (holding that "the bare allegation that [the plaintiff's] attacker was a known violent gang member [was] insufficient to establish the requisite deliberate indifference necessary to sustain a failure to protect claim") (internal quotation marks and citations

omitted); *Covington v. Canerro*, 3:17-cv-05145, 2017 U.S. Dist. LEXIS 144515, at *4 (D.N.J.

Sept. 6, 2017) (emphasizing that "a bare assertion that gang and non-gang members have been

housed together, without more, is insufficient to state a failure to protect claim"); *Sutton v.

Johnson*, No. 7:10-cv-00070, 2010 U.S. Dist. LEXIS 42766, at *4-5 (W.D. Va. Apr. 30,

2010) (holding that an inmate's "alleged membership in a gang known for violence . . . did not

put [a correctional officer] on notice that [the inmate] posed a specific risk of harm to his cell

mates or to [the plaintiff] in particular").  As was true in *Sutton*, Plaintiff does not allege that his

cellmate, prior to the alleged April 27, 2020 sexual assault, "had made any threats to harm him

or, if so, that he had communicated such threats" to these Defendants.  *Sutton*, 2010 U.S. Dist.

LEXIS 42766, at *5.  Nor does Plaintiff allege that he had informed any of these Defendants of

any other reason that his cellmate or other gang members posed a particular threat of harm to

him, other than blanket assertions to unspecified staff that there is a history of being victimized

by unspecified gang members – without providing any further details as to what the information

was, to whom it was given, or how it created a dangerous situation for him beyond

generalizations.  *Id.*  In fact, Defendant McDonald responded to Plaintiff's March 2, 2020

informal complaint stating how "[t]here are no keep separates in [Plaintiff's] file."  (*See* ECF No.

34-1, at 61, "Exhibit #31").  Rather, Plaintiff appears to simply be complaining about aspects of

prison life with which he apparently does not agree.  But even assuming as true Plaintiff's

contentions that he told Sussex II staff after-the-fact that gang members had allegedly robbed

him, spilled stuff on his property, and provided general claims of being "under threat" by

unnamed gang members and reports to staff that his cell mate is a "registered gang member"

before any alleged attack does not establish a "sufficiently culpable state of mind" required to

state an Eighth Amendment failure to protect claim.  Without this evidence of a "sufficiently

culpable state of mind," Plaintiff's claims, at best, sound in negligence, which does not rise to the

level of an Eighth Amendment claim.  *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)

(stating that it was insufficient to show a defendant "should have" recognized a substantial risk

of harm and recognizing negligence is below the threshold to state an Eighth Amendment claim).

Because Plaintiff has not shown that these Defendants actually knew of and disregarded a

substantial risk that he would be assaulted, robbed and/or harmed in any way by his "gang

member" cellmates, his claims in Counts 17 and 25 are insufficient to state a failure-to-protect

claim under the Eighth Amendment against Defendants Carpenter (Count 17), Critton (Count 17)

and Turner (Count 25) and should therefore be dismissed against them for failure to state a

claim.

> ### *Count 17 (Carpenter and Critton): Threats of Transfer to Another Facility and Violence*

Here, Plaintiff's claims fail from the outset because he has failed to allege any physical or

emotional injury, never mind a "serious or significant physical or emotional injury."  *Farmer*, 511

U.S. at 834.  Plaintiff alleges only generally that Defendants Carpenter and Critton (Count 17),

along with other defendants, threatened him with transfer to Red Onion State Prison.  (ECF No.

34, ¶¶ 2 and 18).  He further alleges that Defendant Carpenter threatened to let a correctional

officer physically assault him on or about May 30, 2019.  (*Id.* at ¶¶ 18-19).  Incidents of verbal

harassment or mere threats, without more, does not constitute an unconstitutional prison

condition, and such conduct, although possibly unprofessional and improper, does not violate the

Eighth Amendment.  *See Henslee*, 153 F. App'x at 179 ("Mere threats or verbal abuse by prison

officials, without more, do not state a cognizable claim under § 1983."); *see also Morva v.

Johnson*, No. 7:09-cv-00515, 2011 U.S. Dist. LEXIS 85960, 2011 WL 3420650, at *7 (W.D. Va.

Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to

an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to a due process violation or an Eighth Amendment violation).  Therefore, Plaintiff's claims against Carpenter and Critton in Count 17 are insufficient to state a claim for deliberate indifference against them for having allegedly made such statements, and therefore, are necessarily insufficient to prove that they failed to protect him.  Moreover, inmates have no constitutional right to be housed in any prison facility or particular pod within a facility.  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Pevia v. Hogan*, 443 F.Supp. 3d 612, 634-35 (D. Md. 2020).[8]  Accordingly, Plaintiff fails to state a claim upon which relief can be granted, and the Eighth Amendment claims against Defendants Carpenter and Critton (Count 17) should be dismissed.

Accordingly, the Defendants respectfully request that the Eighth Amendment claims alleged against them in Counts 17 (Carpenter and Critton) and 25 (Turner) be dismissed.

**B.    Plaintiff does not plead sufficient facts to state a Fourteenth Amendment Claim Against Defendants Carpenter, Turner and Coleman in Counts 18, 21-22 and 25.**

Turning to Plaintiff's claims in Counts 18, 21 and 25, liberally construed, appear to assert violations of his Fourteenth Amendment rights against Defendants Carpenter (Count 18) and Turner (Counts 21 and 25).  (ECF No. 34, ¶¶ 8-9 and 11 and at 9, "Claim #1" and "Claim #2").

---

[8] Albritton could possibly, *arguendo*, establish a basis for Due Process protection under a theory that "a Virginia law or policy provid[es] him with an expectation of avoiding the conditions of confinement" at a higher-security institution, *and* "that those conditions are harsh and atypical in relation to the ordinary incidents of prison life."  *Prieto v. Clarke*, 780 F.3d 245, 252 (4th Cir. 2015).  However, as explained below in B, Albritton has not demonstrated that he has been subjected to those types of conditions.  Based upon his own documentation attached in support of his Second Amended Complaint, the ICA hearing recommendation was to transfer him to Red Onion, Sussex I or Wallens Ridge. (*See* ECF No. 34-1, at 65, "Exhibit #34).  Upon information and belief, Albritton was not transferred to Red Onion, Sussex I or Wallens Ridge, but was eventually transferred to River North Correctional Center, a Level 4 facility, where he is currently incarcerated.

To state a procedural due process claim against a prison official, an inmate must establish three elements.  First, he must allege that he was denied a liberty interest arising under the Constitution or state law, *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005); second, that the denial imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995); and third, that the process employed by the prison was "constitutionally inadequate," *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006).

### *Counts 18 (Carpenter) and 21 (Turner): Threatening Plaintiff's Employment*

In Counts 18 and 21, Plaintiff fails to allege that he suffered the loss of any cognizable liberty or property interest.  Plaintiff claims that Defendants Carpenter and Turner threatened his employment working in the kitchen because of his refusal to dismiss his lawsuits.  (ECF No. 34, ¶¶ 9 and 11 and at 9, "Claim #1" and "Claim #2").  Prisoners have no liberty or property interest in employment while in prison.  *Robles v. Sturdinvant*, No. 7:14-cv-00070, 2014 U.S. Dist. LEXIS 40630, 2014 WL 4853409, at * 1 (W.D. Va. Mar. 27, 2014) ("[I]nmates have no independent constitutional right to a prison job and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles."); *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) ("[I]nmates do not have a constitutional right to a prison job, and in turn, the deprivation of a prison job states no independent constitutional claim.").  Thus, Plaintiff fails to state a due process violation against Defendants Carpenter in Count 18 and Turner in Count 21; therefore, Counts 18 and 21 should be dismissed against them.

### *Count 22 (Turner and Coleman): Deprivation of Property*

In Count 22, Plaintiff claims that Defendants Turner and Coleman deprived him of his personal property by arranging for Plaintiff's cell mate to rob him while he was at work without

due process.  (ECF No. 34, ¶ 13 and at 9, "Claim #2").  The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation if the state provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 545 (1981).  Moreover, Virginia's provision of adequate post-deprivation remedies forecloses Plaintiff's due process claim for the deprivation of property.  *See Hudson*, 468 U.S. at 533; *Wilson v. Molby*, No. 1:12cv42 (JCC/JFA), 2012 U.S. Dist. LEXIS 72061, 2012 WL 1895793, at *6-7 (E.D. Va. May 23, 2012); *Henderson v. Virginia*, No. 7:07-cv-00266, 2008 U.S. Dist. LEXIS 5230, 2008 WL 204480, at *10 n.7 (W.D. Va. Jan. 23, 2008).  In this case, Plaintiff made use of the institution's post-deprivation remedies by way of the grievance process, and, other state law remedies, including the Virginia Tort Claims Act, were and/or are available to Plaintiff as a means to seek compensation for his missing food and property.  *See Wadhams v. Procunier*, 772 F.2d 75, 77-78 (4th Cir. 1985) (holding the remedies available under the Virginia Tort Claims Act to be sufficient post-deprivation remedies); *Ballance v. Young*, 130 F. Supp. 2d 762, 767 (W.D. Va. 2000).  Plaintiff attaches a copy of a Level I grievance response in support of his allegations against Defendants Turner and Coleman in Count 22.  (*See* ECF No. 34-1, at 23, "Exhibit 15").  The Level I grievance response shows that the Plaintiff was compensated for his stolen items on March 26, 2019, when he was provided $99.74 worth of commissary items to for the food and hygiene items.  (*See id.*).  Accordingly, because there are state remedies capable of addressing Plaintiff's alleged injury, Plaintiff cannot state a claim for loss of his property under the Fourteenth Amendment.  The remaining portion of Count 22 against Defendants Turner and Coleman should be dismissed as frivolous and for failure to state a claim.

*Count 25 (Turner): Housing Plaintiff with Gang Members*

As to Count 25 against Defendant Turner, Plaintiff alleges that Turner housed him with gang members due to his disciplinary charge for stealing without a disciplinary hearing or finding of guilt in violation of his due process rights. (ECF No. 34, ¶ 19 and at 9, "Claim #2").

The initial inquiry for a prisoner's due process claim is whether the plaintiff has demonstrated that he has been deprived of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 477-78 (1995). Liberty interests which are protected by the Fourteenth Amendment arise from two sources – the Due Process Clause and the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976)). Prison officials have "broad administrative and discretionary authority over the institutions they manage," and "lawfully incarcerated persons retain only a narrow range or protected liberty interests." *Id.* at 467 (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). As long as the degree of confinement a prisoner is subjected to is "within the sentence imposed upon him" and does not otherwise violate the Constitution, the Due Process Clause "does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468. Inmates do not have a liberty interest in a particular security classification or in freedom from segregation; "reclassification into a different security level is simply an incident of prison life." *Shelton v. Angelone*, 183 F. Supp. 2d 830, 838-39 (W.D. Va. 2002). Moreover, "[t]here is no constitutional right for an inmate prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 634 (D. Md. 2020)

(collecting authority).  Nor has Plaintiff alleged facts to show that his placement in a "gang member housing unit" caused him to experience conditions that imposed an atypical and a significant hardship "in relation to the ordinary incidents of prison life" which dramatically depart from the expected conditions of his sentence, as required to trigger constitutional due process protections.  *See Sandin*, 515 U.S. at 484 (1995); *see also Garrett v. Angelone*, 940 F. Supp. 933, 943 (W.D. Va. 1996) (finding that a prison regulation creates a liberty interest and implicates due process protections only where the regulation imposes upon the inmate conditions that dramatically depart from the expected conditions of his sentence).

As Plaintiff has no liberty interest in a particular portion or unit at Sussex II and has not alleged atypical and significant hardship, his due process claim in Count 25 fails.  Therefore, the Court should dismiss Count 25 against Defendant Turner.

Accordingly, Plaintiff has failed to state a viable violation of the Fourteenth Amendment against Defendants Carpenter (Count 18), Turner (Counts 21-22 and 25) and Coleman (Count 22), and therefore these claims should be dismissed against them.  As Count 22 is the only claim alleged against Defendant Coleman, the Second Amended Complaint should be dismissed against him entirely.

### III.   Monetary Damages for Acts Committed by VDOC Defendants in Their Official Capacities are Not Cognizable Under § 1983

Although Plaintiff has not stated whether he is suing the Defendants in their individual or official capacities, to the extent that Plaintiff requests monetary damages against the VDOC Defendants in their official capacities, these claims are not cognizable in a suit under § 1983. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  All of the VDOC Defendants in their official capacities, therefore, are immune from suit.  *Id.*  Accordingly, VDOC

Defendants request that all claims for monetary damages against them in their official capacities be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants Liptrot and Coleman respectfully request this Honorable Court grant their Motion and dismiss the Second Amended Complaint against them. Further, Defendants Carpenter (Counts 17-18), Critton (Count 17) and Turner (Counts 21-22 and 25) respectfully request this Honorable Court grant their partial Motion and dismiss these claims against them.

Respectfully submitted,

LT. LIPTROT, ANITA CRITTON, MR. TURNER, SGT. COLEMAN and MELISSA CARPENTER

By: _____/s/_____
Megan L. O'Brien, AAG, VSB #92095
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 624-9440
(804) 786-4239 (Fax)
Email:  mlobrien@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of July 2023, I electronically filed the foregoing

Memorandum in Support of Defendants' Partial Motion to Dismiss with the Clerk of Court using

the CM/ECF system which will send notification of such filing to the following:  N/A;

And I hereby certify that I have mailed the document, postage prepaid, to the following

non-filing user:

VADOC Centralized Mail Distribution Center
DeVinche Albritton, #1016653
3521 Woods Way
State Farm, Virginia 23160

By:           /s/
Megan L. O'Brien, AAG, VSB #92095
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 624-9440
(804) 786-4239 (Fax)
Email:  mlobrien@oag.state.va.us